IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| **George Frederick Delaney** | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17cv767 (CMH/MSN) |
| | ) | |
| **Dr. Abdul H. Jamaludeen, et al.,** | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION

George F. Delaney, a former inmate at Virginia Beach Correctional Center (VBCC), has brought a pro se civil rights action against Dr. Abdul Jamaludeen, alleging violations of his constitutional rights, see 42 U.S.C. § 1983, and Virginia tort law.[1] Dr. Jamaludeen has filed a second motion for summary judgment, supported by a legal memorandum and exhibits.[2] [Dkt. Nos. 73–74]. Delaney received the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and filed a response in opposition.[3] [Dkt. Nos. 75, 87]. Delaney also has moved for appointment of counsel and immediate injunctive relief. [Dkt. Nos.

---

[1] Delaney has also named as a defendant Marie Kuchta, a dietician at VBCC. To date, she has not been served. Therefore, Delaney will be directed to fill out and return the U.S. Marshals Form 285 attached to the accompanying Order.

[2] Dr. Jamaludeen also relies on exhibits attached to a memorandum in support of a motion for summary judgment filed by Sheriff Kenneth Stolle [Dkt. No. 43], who was dismissed from this lawsuit in an Order dated September 24, 2018 [Dkt. No. 64].

[3] Shortly before a response was due, Delaney moved the Court for additional time to respond to Dr. Jamaludeen's motion for summary judgment. [Dkt. No. 82]. He later filed what he labeled a motion for summary judgment, which contests Jamaludeen's motion. [Dkt. No. 87]. The Court construes that motion as one opposing Jamaludeen's and will grant nunc pro tunc Delaney's motion for an extension of time. Additionally, because his motion directs the Court to the evidence he filed with his verified complaint, the Court will consider his sworn statement and accompanying evidence. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge."); see also Williamson v. Stirling, 912 F.3d 154, 160 (4th Cir. 2018) (accepting as evidence at summary judgment pro se plaintiff's verified complaint).

78–79, 83]. For the reasons that follow, Jamaludeen's second motion for summary judgment will be granted and Delaney's motions for appointment of counsel and injunctive relief will be denied.[4]

## I. Background

The following facts, with disputes noted, relate to Delaney's medical treatment while confined at VBCC, and are viewed in the light most favorable to Delaney as the nonmoving party. See Bennett v. Garner, 913 F.3d 436, 438 (4th Cir. 2019).

Delaney arrived at VBCC on March 10, 2016, with preexisting gastrointestinal conditions: ulcerative colitis (treated with a total colectomy and "J-pouch") and Crohn's disease. [Pl. Verified Compl. ¶¶ 20–21, 23; Stolle Ex. B, at MR1]. During his medical intake, he reported his digestive conditions and a need for a low-residue diet. [Pl. Verified Compl. ¶ 23; Stolle Ex. B, at MR158]. Dr. Jamaludeen declares that a low-residue diet was ordered for Delaney at that time. [Jamaludeen Decl. ¶ 5]. However, Delaney's medical records show that this diet was not ordered until May 2 (save for a single day in March) and lasted through October 14. [Jamaludeen Ex. D]. The records show, instead, that Delaney initially was assigned a regular diet with supplemental shakes. [Id.] Jamaludeen had previously assigned that diet to Delaney during a short stint at VBCC earlier that year because, he explained, "Delaney denied being able to eat nearly all forms of nutrition available," so he "ordered a regular diet which contained low-residue items that he could select on the tray," supplemented by nutritional shakes. [Jamaludeen Decl. ¶ 5]. Jamaludeen further avers that even when the low-residue diet was prescribed,

---

[4] Because Delaney's federal claims against Dr. Jamaludeen will be extinguished through this Order, the Court will decline to exercise supplemental jurisdiction over Delaney's remaining state law claims and dismiss them without prejudice. See 28 U.S.C. § 1367(c)(3); Thomas v. The Salvation Army S. Territory, 841 F.3d 632, 642 (4th Cir. 2016).

2

Delaney would purchase noncompliant food items from the canteen, such as Nesquik chocolate milk, hot wings, fried chicken, and fries. [Id ¶¶ 6–7; Stolle Ex. D, at Canteen10].

Delaney submitted sick-call requests and grievances in March and April 2016 reporting that he had not been given an appropriate diet and, as a result, was experiencing rectal swelling and severe pain. [Pl. Verified Compl. ¶¶ 24–27; Pl. Ex. B–D]. He requested a low-residue diet and HC suppositories to treat his pain. [Pl. Verified Compl. ¶¶ 24–25; Pl. Ex. B–C]. The requested suppositories were provided by June 7, but Delaney contends that a low-residue diet continued to be withheld. [Pl. Verified Compl. ¶¶ 26, 33, 41; Pl. Ex. M–O]. Grievance responses dated August 24 and September 12, 2016, however, explain that a low-residue diet had been prescribed for Delaney, and if his actual meals were incorrect, Naphcare, VBCC's medical contractor, is a separate contractor from the food-services contractor and, thus, not responsible. [Pl. Ex. F].

Delaney was admitted to the hospital on June 24, 2016, to be treated for a small bowel obstruction. [Stolle Ex. B, at MR14, MR19]. He was discharged on July 11 with instructions to maintain a low-residue diet with supplemental shakes. [Pl. Ex. L-2]. In particular, Delaney was instructed that he could eat eggs, chicken, fish, noodles, bread, and mashed potatoes, but not to eat processed food, fruit, vegetables, beans, peanut butter, cheese, nuts, and seeds. [Id.]. When he returned to VBCC, he continued to complain that he was not receiving meals that complied with his low-residue diet. [Pl. Ex. G & G-1].

A follow-up colonoscopy performed on September 16, 2016, revealed no sign of obstruction or "active" inflammatory bowel disease. [Stolle Ex. B, at MR1, MR6]. Afterwards, Dr. Jamaludeen switched Delaney's diet from low residue to renal, which the doctor describes as a "low-waste diet with high quality proteins." [Jamaludeen Decl. ¶¶ 11–12]. With

this new diet, Delaney contends, he experienced the "same complications" he suffered before his hospitalization, including severe pain and discomfort when attempting a bowel movement. [Pl. Verified Compl. ¶¶ 45, 51]. According to Delaney, this prompted him to give away his meals, forcing himself to eat only when he would "eventually get hungry." [Id. ¶ 51]. Correctional officers notified Jamaludeen that Delaney had been giving away his renal-diet meals and also selling his nutritional shakes. [Pl. Verified Compl. ¶ 49; Jamaludeen Decl. ¶¶ 6, 14]. When Jamaludeen learned about this, he discontinued both on May 9, 2017, although the doctor reinstated the diet (without supplemental shakes) two weeks later on May 19, 2017. [Jamaludeen Decl. ¶¶ 6, 14; Jamaludeen Ex. D]. Jamaludeen avers that, from that point on, he monitored Delaney for malnutrition and identified no weight or muscle loss. [Jamaludeen Decl. ¶ 14.]. Delaney contends, however, that he lost 15 pounds between May 10 and June 1. [Pl. Verified Compl. ¶ 51].

Delaney filed suit on July 6, 2017, claiming that Dr. Jamaludeen acted with deliberate indifference to his serious medical needs while he was incarcerated at VBCC. [Dkt. No. 1]. (Delaney left VBCC on April 16, 2019. [Dkt. No. 83]).

## II. Standard of Review

The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Hupp v. Cook, 931 F.3d 307, 317 (4th Cir. 2019) (internal quotation marks and citations omitted).

## III. Analysis

Delaney contends that Dr. Jamaludeen acted with deliberate indifference to his serious medical need because the doctor knew about his gastrointestinal conditions yet withheld a medically necessary diet and pain-relief suppositories. "It is beyond debate that a prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks and citation omitted). To demonstrate deliberate indifference, an inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." Id. at 356–57 (internal quotation marks, citations, and brackets omitted). The first component is an objective inquiry and the second is subjective. Heyer v. U.S. Bureau of Prisons, 849 F.3d 202, 209–10 (4th Cir. 2017).

Dr. Jamaludeen argues that the undisputed facts demonstrate that he did not act with deliberate indifference to Delaney's medical conditions. Focusing on the subjective component of the deliberate-indifference standard, he argues that he appropriately managed Delaney's conditions. He asserts that he continuously treated Delaney, making adjustments to his treatment plan as needed. Delaney's disagreement with his medical judgment, he adds, is insufficient to impose constitutional liability.

The undisputed record before the Court does not establish that Dr. Jamaludeen was deliberately indifferent to Delaney's gastrointestinal conditions. First, the evidence shows that Delaney was prescribed various diets throughout his stay based on Dr. Jamaludeen's professional

judgment. Jamaludeen initially ordered a regular diet with supplemental nutrition shakes, switched the diet to low residue within a couple months, and, then, after receiving the colonoscopy report, changed his diet to a renal diet. Although Delaney would have preferred a low-residue diet ordered upon intake and continued throughout his incarceration, his personal opinion cannot "override the reasonable professional judgment of the prison's medical team." See United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011). To the extent that Delaney claims that these diets were ineffective, this would at most amount to medical malpractice, which is not cognizable in a § 1983 action. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Nor did Dr. Jamaludeen act with deliberate indifference when he discontinued Delaney's nutritional shakes upon learning that he was selling them to other inmates. Although the Eighth Amendment requires prisons to provide medically indicated diets, this requirement is met when the prison provides sufficient food during each meal that provides "adequate sustenance without causing adverse medical consequences." Scinto v. Stansberry, 841 F.3d 219, 233–34 (4th Cir. 2016). Because Delaney had stopped drinking the shakes on his own accord, he cannot claim that removing them from his diet adversely affected his health.

Additionally, much of Delaney's complaint charges that the food provided to him at mealtimes did not comport with his prescribed diets. But a separate contractor (CBM Managed Services) is responsible for providing meals to inmates at VBCC. (Stolle Decl. ¶ 7). Because "liability may be imposed based only on an official's *own* conduct," Delaney cannot fault Dr. Jamaludeen for the separate meal provider's alleged failure to provide the correct meals. See Danser v. Stansberry, 772 F.3d 340, 349 (4th Cir. 2014) (emphasis added).

Finally, Delaney has not shown that Dr. Jamaludeen acted with deliberate indifference to his rectal pain. The undisputed record shows that Delaney asked for HC suppositories for rectal

swelling and pain in a sick call request dated March 16, 2016, but that Jamaludeen did not order them until June 2. (Pl. Ex. C; Stolle Ex. B, at MR183). A delay in medical care may constitute deliberate indifference, but only if the delay causes substantial harm to the inmate. See Webb v. Hamidullah, 281 F. App'x 159, 166 & n.13 (4th Cir. 2008) (collecting cases). But the evidence demonstrates that a few weeks before Jamaludeen ordered the HC suppository, Delaney refused a different rectal suppository. [Stolle Ex. B, at MR 149]. Because Delaney refused a different rectal-pain reliever just weeks before he was given the suppository he requested, a reasonable factfinder could not conclude that the delay exacerbated his preexisting pain. See Smith v. Walker, 845 F. Supp. 2d 673, 677 (W.D.N.C. 2012) (concluding that inmate could not demonstrate that delay in medical care caused substantial harm because he did not show that medical staff aggravated preexisting injury or caused permanent injury).

## IV. Additional Motions

### A. Injunctive Relief

Delaney also has filed what he labeled a "motion for entry of order to provide medical necessary diet," which the Court construes as a motion for injunctive relief. Because Delaney is no longer confined at VBCC and, thus, no longer in the defendant's care, this motion will be denied as moot. See Incumaa v. Ozmint, 507 F.3d 281, 286–87 (4th Cir. 2007) ("[T]he transfer of an inmate from a unit or location where he is subject to the challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief, even if a claim for money damages survives.").

## B. Appointment of Counsel

Finally, Delaney has moved for appointment of counsel. [Dkt. Nos. 78, 83]. In one motion, he argues that the legal materials at VBCC are outdated, and, further, that he cannot question witnesses while incarcerated. In a second motion, he argues that he is scheduled for various jail transfers (including time out of jail), which will limit his access to legal materials. Because Delaney no longer appears to be confined within the Virginia Department of Corrections, his arguments about incarceration-related litigation limitations are moot. To the extent he argues that he has limited access to legal materials outside of a jail setting, that is not an exceptional circumstance warranting appointment of counsel. See Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Accordingly, the Court will deny Delaney's motions.

## V. Conclusion

For the reasons outlined above, Dr. Jamaludeen's second motion for summary judgment [Dkt. No. 73], with respect to Delaney's federal claims, will be granted through an Order that will issue alongside this Memorandum Opinion.

Entered this 4th day of Nov 2019.

*/s/ Claude M. Hilton*
United States District Judge

Alexandria, Virginia